UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:19-CV-00640-TJC-JRK

NANCY HARVEY, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

THE HAMMEL & KAPLAN COMPANY
LLC d/b/a HOSPITAL LIEN STRATEGIES,

    Defendant.
_____/

**JOINT RESPONSE TO THIS COURT'S ORDER OF SEPTEMBER 25, 2020**

By Order dated September 25, 2020 [D.E. 43], this Court asked the Parties to address whether the Eleventh Circuit's decision in *Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020) has any effect on the proposed Settlement before this Court.

For the reasons set forth below, Plaintiff believes that the decision does not preclude approval of the modest Service Award set forth in the Settlement Agreement for various reasons, including: (1) *Johnson* is distinguishable because this is not a common fund case; (2) *Johnson*'s analysis is fundamentally flawed; (3) Plaintiff's individual damages justify her award; and (4) *Johnson* is not binding because the mandate has not issued.

Other than to agree that this is not a common fund case, Defendant takes no position on the applicability of *Johnson* or its analysis to the facts of this case, or to the other arguments made by Plaintiff below.

1

I.   *Johnson* **Is Distinguishable**

It appears that this Court is concerned that even if *Johnson* is not technically binding, the Supreme Court cases it relies on still would be. As a result, Plaintiff will address her interpretation of those cases and the analysis set forth in *Johnson*.

The *Johnson* analysis does not apply to this case because (1) this is not a common fund case; (2) the Service Award is not opposed; and (3) the payment is fair and reasonable in light of her damages.

A.   **Not A Common Fund**

The first reason that *Johnson's* prohibition on incentive awards in common fund class actions is not applicable to this case is that Plaintiff's award is not being made from a common fund. *Johnson's* entire analysis of service awards is premised by circumstances in which the award is to be deducted from a common fund created through the litigation.

Citing what it called the "rule of *Greenough*" the *Johnson* Court starts its analysis of *Greenough* by recognizing that the "special master recommended that Vose be granted an award *from the fund*." 2020 WL 5553312, at * 8. The *Greenough* case itself begins with an analysis of the different types of suits which allow charges to be made *against* a fund:

> The same rule is applied to creditors' suits, *where a fund has been realized* by the diligence of the plaintiff. In England, where specialty creditors have a preference, a simple contract creditor who *recovers a fund* for the general benefit is allowed his costs, as between party and party, *out of the fund* in preference to all other claims; and the balance of his costs, as between solicitor and client, are to be paid either out of the fund or *pro rata* by all the creditors who partake of the benefit of the suit.

*Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 533, 1881 WL 19795, at *5 (1881) (emphasis added). The Court goes on to reference several other circumstances where expenditures

are made from a common fund. *Id*. at 534 (talking of payment from common funds in bankruptcy cases); *Id*. at 535 (citing $5000 in counsel fees paid "out of the proceeds of a railroad mortgage.").

The Court goes on to explain that in railroad trust litigation, like that at issue in both *Greenough* and *Pettus*, certain amounts are regularly paid from the fund being protected:

> In the vast amount of litigation which has arisen in this country upon railroad mortgages, where various parties have intervened for the protection of their rights, and *the fund* has been subjected to the control of the court and placed in the hands of receivers or trustees, it has been the common practice, as well in the courts of the United States as in those of the States, to make fair and just allowances for expenses and counsel fees to the trustees, or other parties, promoting the litigation *and securing the due application of the property to the trusts and charges to which it was subject.* Sometimes, no doubt, these allowances have been excessive, and perhaps illegal; and we would be very far from expressing our approval of such large allowances to trustees, receivers, and counsel as have sometimes been made, and which have justly excited severe criticism.
>
> Still, a just respect for the eminent judges under whose direction many of these cases have been administered would lead to the conclusion that allowances of this kind, if made with moderation and a jealous regard to the rights of those who are interested in *the fund*, are not only admissible, but agreeable to the principles of equity and justice.

*Greenough*, 105 U.S. at 536–37, 1881 WL 19795, at *6–7 (emphasis added).

Citing *Pettus*, the *Johnson* Court again limits its ruling to common fund type cases:

> But as relevant to our analysis of incentive awards, *Pettus* is significant principally as a reiteration of the dichotomy drawn in *Greenough*: While a class representative's claim for "the expenses incurred in carrying on the suit and reclaiming the property subject to the trust" is proper, his "claim to be compensated, **out of the fund or property recovered**, for his personal services and private expenses" is "unsupported by reason or authority." *Pettus*, 113 U.S. at 122, 5 S.Ct. 387.

*Id.* at *9. (emphasis added).  Footnote 8 of *Johnson* even explicitly states that "[o]ther circuits have recognized the continuing vitality of *Greenough* as prohibiting awards for 'private' and 'personal' expenses *in common-fund cases*…." *Id.* at *9 (emphasis added).

Accordingly, the holdings of *Greenough*, *Pettus* and *Johnson*, are all expressly limited to cases where the plaintiff was seeking award from the court *from* a common fund, and over the objection of the opposing party.  Because this case does not involve a common fund, there is no application of these facts to the case at bar.

Instead of a common fund divided among class members, each class member in this case is to receive a settlement payment equal to 55% of the amount they paid to Defendant over and above the amount of their hospital bill.  The parties also negotiated a separate amount for attorney fees based upon lodestar and a separate amount ($1,500) to be paid to Plaintiff Harvey.  These amounts are to be paid separately and not from the amounts to the remaining class members. This is not a common fund class action in which a lump sum is provided by the defendant and from that lump sum, class benefits, attorney fees and a service award are deducted.  As a result, *Johnson* and the cases cited therein are inapplicable to this case.

### B.     The "Funds" At Issue Are Different

Furthermore, the type of common "funds" at issue in both *Greenough* and *Pettus* involved real estate trusts that existed as separate legal entities prior to the litigation and would exist after the litigation concluded.  Unlike settlement funds created entirely by the litigation, these railroad trusts were operated by trustees who allegedly abused their powers by mishandling the assets of the trust. The plaintiff's lawsuit may have *saved* the trust fund, but it did not *create* the fund itself.  This distinction is important.  For example, the trust at issue in *Pettus* included "road beds, depots, side tracks, turnouts, trestles and bridges" owned and used by the railroad defendant to run the daily

4

operations of the railroad. *Pettus*, 5 S.Ct. 387, 387, 113 U.S. 116, 117 (1885). To make a charge against a pre-existing trust estate by Vose would reduce the value of the trust to the detriment of the other shareholders. Such cases were much more akin to a derivative suit brought by stockholders than to a class action alleging damages. As a result, there is an inherent conflict between Vose and the other shareholders of the trust that is obviously distinguishable from "common funds" created for the payment of damages in statutory and common law class actions. In a modern-day class action settlement fund, that fund was created entirely through the litigation, did not exist previously, and was created for the sole and exclusive purpose of compensating plaintiff and other class members. The railroad trusts at issue in both Supreme Court cases existed separate and apart from the litigation and were used for the purpose of operating the railroad business. Treating these two distinct types of funds the same is a fundamental flaw in *Johnson's* analysis.

### C. The Amount at Issue Is Distinguishable

The excessiveness of the "salary" at issue in *Greenough* must also be considered in light of the Supreme Court's caution:

> It would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors, and that perhaps only to a small amount, if they could calculate upon the allowance of a salary for their time and of having all their private expenses paid. Such an allowance has neither reason nor authority for its support.

*Greenough*, 105 U.S. at 536–37, 1881 WL 19795, at *7.

The use of the word "salary" was not an understatement. Vose sought to be paid a full year's worth of salary for working on the case, which is a far, far cry from the modest amount at issue here. Adjusted for inflation, the $2,500 per year amount sought by Vose, and awarded by

the trial court, is equal to $63,705.39 when adjusted for inflation.[1] Vose was awarded the same amount for 10 years for a total value equal to $637,053.90. Certainly, asking for an award for working full time on a case, as Vose did in *Greenough*, is a distinguishable from the meager $1,500 sought by Plaintiff Harvey. She is not seeking a "salary" as Vose did. Instead, she is only seeking minor compensation for dismissing her claims and for the work she performed on behalf of the class – an amount that she negotiated based upon the value of her individual case. This case is also distinguishable for this reason and the Greenough rule should not be applied to the facts at bar.

## II. THE FOUNDATION OF *JOHNSON* IS FUNDAMENTALLY FLAWED

Should this Court disagree that the Supreme Court precedent relied on in *Johnson* is distinguishable, or that the holding is not limited to common fund cases, the prohibition on incentive payments to named plaintiffs should still not be followed because it was based on a flawed interpretation of Rule 23. While *Johnson* argues that there is no basis in Rule 23 for incentive awards, this argument confuses the freedom of parties to negotiate any terms of a settlement within the procedural requirements of Rule 23.

The amount of statutory or actual damages that a named Plaintiff can collect in a lawsuit is governed by the claims she advanced and the amount she can negotiate with the defendant, not the Rules of Civil Procedure. A class plaintiff is still just a plaintiff who is negotiating terms with a defendant for the voluntary dismissal of the action.[2] Millions of individual cases settle because a defendant or insurance company offers an amount of money to the plaintiff in exchange for dismissing her case. Sometimes, that amount is based exclusively upon the damages that may be

---

[1] https://www.in2013dollars.com/us/inflation/1880?amount=2500.
[2] This is also fundamentally different from the facts of *Greenough* and *Pettus* where the award of fees was opposed by the opposing party rather than agreed to per the terms of a settlement.

recovered at trial.  As often, however, such amounts are negotiated to include attorney fees, costs and amounts above the amount that the parties believe a jury would award at trial in order to entice the plaintiff to settle the matter, thereby saving time and litigation costs to the defendant.  Freedom of contract controls and the Courts play no role in the settlement of individual actions, save enforcement of such binding contractual agreements.

*Andersen Windows, Inc. v. Hochberg*, 997 So.2d 1212, 1214 (Fla. 3d DCA 2008)("Courts, without dispute, are not authorized to rewrite clear unambiguous contracts. And where a contract is clear and unambiguous, it must be enforced as written.").

A named plaintiff deciding to voluntarily dismiss her class action lawsuit is not materially different than any other plaintiff.  She (with the help of class counsel) negotiates with the defendant all the terms that she believes are fair and necessary for herself and for the class of people she seeks to represent, in light of her belief as to what may transpire at trial.  The terms deemed necessary by both parties are included in the settlement agreement.  Save notice, Rule 23 does not require any specific term be included in a class action settlement.  Indeed, it would be impossible to anticipate the complexities of some class action settlements.  Likewise, Rule 23 does not include any terms that are strictly prohibited in a class action settlement. Instead, Rule 23 simply requires the Court to look to the terms that have been negotiated, whatever they are, and decide whether those terms are fair, adequate and reasonable under the factors listed in Rule 23(e)(2).

The amount being paid under the settlement to the named plaintiff is just that - an amount to be paid to the plaintiff.  It encompasses a value that the defendant is willing to pay in exchange for a release.  Although not all, most individual and class settlements include a payment to the plaintiff.  The *only* difference between an individual settlement and a class settlement is that because there is a potential for selling out the class in order to receive a windfall for the plaintiff

and class counsel, Rule 23(e) provides protection to the class by requiring court approval of class actions settlements. Whether the amount to be paid to the plaintiff was negotiated in good faith, whether that amount is justified by the relief provided, and whether the proposal treats class members "equitably relative to each other," are the factors to be weighed by this Court against every term of the settlement, including the award to the named plaintiff. Fed. R. Civ. P. 23(e)(2)(A-D). Either the amount is fair or it is not. There is no requirement that the payment to a plaintiff be named "incentive award," "service award," "damage award" or anything else pursuant to Rule 23. It is simply an amount of money that has been negotiated by the parties to be paid to the named plaintiff. *Johnson's* assumption that Rule 23 must specifically allow for such payments contradicts the general freedom of parties to a lawsuit to negotiate the terms of their settlement as they see fit.

To be sure, if the class were not settled but tried, the situation would be different. If the defendant opposed payment to the plaintiff, as in *Greenough*, and the plaintiff was seeking payment from the damages fund awarded to the class by the jury, then the *Greenough* rule may apply. It is likely, however, that the fact finder would instead award an amount to the named Plaintiff based upon her damages and her work in the case. Such an award would not and should be prohibited simply because it does not match the amounts to be paid to members of the class. It is only "unfair" terms that should be withheld. But, where a defendant has voluntarily agreed to the payment to the named plaintiff and the amount being paid appears to be fair when compared to the other factors set forth in Rule 23(e), then the amount should be approved. Rule 23 requires nothing more and *Johnson* is wrong for suggesting that it must.

### III. **PLAINTIFF'S "SERVICE AWARD" IS PROPER IN LIGHT OF HER RECOVERABLE DAMAGES.**

Additionally, Plaintiff asks this Court to view the "Service Award" as merely a damage award being paid to her in light of the value of her individual claims. The $1,500 Service Award to Plaintiff Harvey under the Settlement should be approved by this Court because it represents a negotiated amount based upon the value of her individual statutory damages under the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA") had she proceeded to trial.

Although the FDCPA and FCCPA both cap statutory damages to the class at 1% of the Defendant's net worth, that cap does not apply to the named Plaintiff. In other words, although all absent class members must share in their *pro rata* share of the 1% common fund that may be created in connection with FDCPA or FCCPA actions, the named Plaintiff does not take a share of that pot. Limiting the class representative to only a share of the net worth would punish the named plaintiff for asserting her claims on a class basis. Accordingly, the named plaintiff in a FDCPA or FCCPA class action can legally recovery the full $1,000 in statutory damages under each statute regardless of what amount, if any, is recovered for the class.

Because the statute allows for such disparate treatment, such a recover does not constitute a "conflict" between the named plaintiff and the class members she seeks to represent. In *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 701 (S.D. Fla. 2004), the court recognized this principle:

> Under the FDCPA, the named plaintiffs of a class action may recover up to $1,000 in damages, costs, and reasonable attorneys' fees and the class may recover up to $500,000 or 1% of the net worth of the defendant, whichever is less. 15 U.S.C. §§ 1692k(a)(2)(B), 1692k(a)(3). Under the FCCPA, each named plaintiff of a class action may be awarded an additional $1,000 in damages and the class may be awarded an additional aggregate amount of $500,000 or 1 percent of defendants' net worth, whichever is less, but not to exceed $1,000 for each individual class member. Fla. Stat. § 559.77(2).

*Id.*; *see also Palmer v. Dynamic Recovery Solutions, LLC*, No. 6:15-cv-59-Orl-40KRS, 2016 WL 2348704, at *7 (M.D. Fla. May 4, 2016) (recognizing named plaintiff's ability to obtain $1000 award of statutory damages under the FDCPA while the class shares a pro-rata amount.).

Accordingly, if this matter had gone to trial, Plaintiff Harvey would have sought a statutory damage award of $1,000 under the FDCPA and another $1,000 under the FCCPA, in addition to the recovery of her actual damages of $1,834.00 (the amount she paid to satisfy HLS's hospital lien over and above the amount set forth on her hospital bill). The total damages she sought from this action are equal to $3,834.00.

Evidence provided through settlement explained that HLS actually has an extremely limited net worth due to its service nature and its small size. Thus, the class would only recover a *de minimis* amount of statutory damages at trial even if they prevailed on the merits. Under the resulting settlement, Plaintiff Harvey released her statutory damage claims (valued at $2,000) in exchange for the payment of 55% of her actual damages. In this regard, Plaintiff Harvey had statutory damage claims that were not available to the Class but were still being released under this settlement. The $1,500 payment due to her under the Settlement is therefore less than the statutory damages she could have received at trial. 15 U.S.C. §§ 1692k(a)(2)(B), 1692k(a)(3). The amount is fair because it does not conflict with the amounts received by the class because the net-worth cap simply precluded any recovery of statutory damages for the class due the negative net worth of the defendant. Because this amount is less than what she could have recovered at trail in the form of statutory damages, it should be approved by this Court.

The fact that the $1,500 amount was listed in the Settlement Agreement as a "Service Award" instead of "damages" to the named plaintiff should not render this amount invalid given that service awards were routinely approved in class action settlements within the Eleventh Circuit

10

prior to the Court's recent decision in *Johnson* 2020 WL 5553312, at *18 (recognizing that such awards are widely approved). Should this Court decide that the name of the award is important, Plaintiff would ask that the parties be allowed to modify the agreement to state that such an award was for Plaintiff's damages as opposed to a "Service Award."

**IV.     *JOHNSON* IS NOT BINDING BECAUSE THE MANDATE HAS NOT ISSUED**

Federal Rule of Appellate Procedure 41 governs appellate court mandates and when they issue:

> (b) WHEN ISSUED. The court's mandate must issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing *en banc*, or motion for stay of mandate, whichever is later. The court may shorten or extend the time by order.

Here, the *Johnson* decision was issued on September 17, 2020, and pursuant to Rule 41, the mandate would have issued seven days later. However, motions were filed by Plaintiff/Appellee Charles T. Johnson on September 25, 2020 and Appellant Jenna Dickenson on September 29, 2020 seeking to stay the mandate while the parties petition the Court for rehearing and/or rehearing *en banc*. On September 28, 2020 and September 30, 2020, respectively, the court extended the time to rehearing. As a result, the mandate has not issued.

Before the mandate issues, the case is <u>not</u> binding. In the matter of *In re Ghandtchi*, No. 83–5019, 705 F.2d 1315, 1316 (11th Cir. May 26, 1983), the Eleventh Circuit recognized this principle when it dismissed a case as moot where the subject matter of the action was addressed by the parties between the time the opinion was rendered but before *en banc* review could be decided.

Furthermore, the opinion should receive *en banc* review. The opinion was written by Judge Newsome and joined by Judge Baldock, who was sitting by designation from the 10th Circuit.

*Johnson*, 2020 WL 5553312 at *1.  Judge Martin, the third member of the panel, wrote a dissent on the issue of incentive awards.  As a result, only one sitting member of the Eleventh Circuit Court of Appeals has decided to take away incentive awards in common fund class actions.  As stated by Judge Martin, "[i]n reversing this incentive award, the majority takes a step that no other court has taken to do away with the incentive for people to bring class actions."  *Johnson*, 2020 WL 5553312 at *15.  Accordingly, it is likely that rehearing *en banc* will be granted.

As such, the *Johnson* decision is not binding on this Court as of yet and that alone provides a basis for simply approving the settlement as indicated in its Preliminary Approval Order of August 27, 2020.

V.      **CONCLUSION**

Settlement Agreements are contracts negotiated by the parties.  Here, the parties negotiated a modest award to be paid to the named plaintiff.  This Court is required to determine whether that amount makes the settlement unfair – which it does not.  The recent decision in *Johnson* has no bearing on this determination because it is distinguishable from the facts of this case, *Johnson*'s legal analysis is flawed, Plaintiff's award is proper in light of her individual damages, and *Johnson* is not yet binding.  For all these reasons, this Court should approve the Settlement as set forth in the Preliminary Approval Order of August 27, 2020.

Respectfully submitted October 2, 2020.

>**VARNELL & WARWICK, P.A.**
>/s/ Brian W. Warwick
>Brian W. Warwick, Florida Bar No.: 0605573
>Janet R. Varnell, Florida Bar No.: 0071072
>1101 E. Cumberland Avenue
>Suite 201H, #105
>Tampa, FL 33602
>Telephone: (325) 753-8600
>Facsimile: (352) 504-3301
>bwarwick@varnellandwarwick.com
>jvarnell@varnellandwarwick.com
>awallace@varnellandwarwick.com
>
>Kristopher M. Nowicki, Esq.
>**THE LAW OFFICE OF NOONEY & ROBERTS**
>1680 Emerson Street
>Jacksonville, Florida 32207
>Telephone: (904) 309-8613
>knowicki@nooneyandroberts.com
>
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:
Alan D. Lash
alash@lashgoldberg.com
Michael L. Ehren
mehren@lashgoldberg.com
LASH & GOLDBERG LLP
Suite 1200, Miami Tower
100 Southeast Second Street
Miami, Florida 33131-2100
Tel: (305) 347-4040
Fax: (305) 347-4050
*Attorneys for Defendant*

>/s/ Brian W. Warwick
>    Brian W. Warwick