UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:19-CV-00640-TJC-JRK

NANCY HARVEY, on behalf of herself
and all others similarly situated,

      Plaintiff,

v.

THE HAMMEL & KAPLAN COMPANY
LLC d/b/a HOSPITAL LIEN STRATEGIES,

      Defendant.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

      Plaintiff and proposed Class Representative, Nancy Harvey ("Plaintiff"), by and

through undersigned counsel, respectfully submits this memorandum of law in support of

her Unopposed Motion for Final Approval of Class Action Settlement.[1]

**I.     SETTLEMENT OVERVIEW**

      Plaintiff's lawsuit alleges that Defendant The Hammel & Kaplan Company, LLC

d/b/a Hospital Lien Strategies' ("Defendant" or "HLS") filed hospital liens against Florida

residents that were: (1) beyond the applicable time period for the perfection of liens in the

---

[1] Defendant does not oppose this Motion for settlement purposes <u>only</u> under the precise terms stated herein and as further set forth in the parties' Class Action Settlement and Release. Defendant expressly denies any alleged violation of any state or federal statutory or common laws, wrongdoing, liability or damages whatsoever with respect to the allegations and claims in this case. Defendant further expressly denies that a class can be certified outside of this Settlement and the precise terms stated herein.

municipality in which the medical care was provided; and (2) for an amount more than the amount of the hospital bill (including applicable discounts).   Plaintiff claims that this conduct gives rise to liability under the Fair Debt Collection Practices Act ("FDCPA"), Florida Consumer Collection Practices Act ("FCCPA"), Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and the Florida common law of unjust enrichment and promissory estoppel.

As discussed below, the proposed class action Settlement[2] provides for a Settlement Payment to a Settlement Class defined as: all persons in the State of Florida who, within four years prior to the filing of Plaintiff's initial Complaint: (1) received medical care from a Florida hospital and subsequently had a hospital lien filed by Defendant beyond the applicable time period for perfection of liens in the municipality in which the care was provided; (2) the amount of Defendant's hospital lien was more than the amount of the hospital bill provided to that person (including applicable discounts); and (3) paid Defendant an amount more than the amount of the hospital bill provided to that person (including applicable discounts).  *See* D.E. 40-1.

The Settlement further provides for injunctive relief, in that Defendant agrees that it will not file any future Florida hospital liens in which the hospital lien amount exceeds the amount of the patient's last hospital bill (including any applicable discounts) as of the date of the lien filing.

---

[2] Capitalized terms herein have the same meanings as those defined in the Class Action Settlement Agreement and Release ("Settlement Agreement"), a copy of which was previously filed as D.E. 40-1.

## II.    BACKGROUND

On May 31, 2015, Plaintiff was injured in a car accident and received medical treatment for her injuries at St. Vincent's Medical Center Riverside in Jacksonville, Florida (the "Hospital"). Plaintiff was unable to pay for her medical treatment at discharge and received a bill from the Hospital in July 2015 (the "Hospital Bill"), which reflected a total amount due of $2,751.00.  Although not clearly explained, the Hospital's total charges for her medical treatment were $4,585.00, but the Hospital included a "self-pay" discount adjustment from $4,585.00 to $2,751.00.    The reason for the discount and the circumstances for when or how the discount could be revoked were not disclosed by the Hospital or set forth in the Hospital Bill.

In 2016, Plaintiff filed a personal injury lawsuit against the other person involved in her car accident and his insurer, State Farm.  Discovery progressed and the Hospital provided copies of Plaintiff's Hospital Bill in response to documents requested by the parties.  At no time did the Hospital disclose the basis for the discount or that the discount could be revoked.

In May 2018, in reliance on the Hospital Bill produced in discovery, Plaintiff settled her personal injury lawsuit with State Farm and received a settlement payment from State Farm which included a payment for medical expenses based on the $2,751.00 Hospital Bill.

In June 2018, three years after medical services were rendered and after a settlement was reached in her personal injury suit, HLS filed a hospital lien on the Hospital's behalf

in the Duval County public records for the $4,585.00 total charges for Plaintiff's medical treatment (the "Hospital Lien").

On May 30, 2019, Plaintiff paid the full Hospital Lien amount to Defendant, under protest and with reservation of rights, in order to satisfy the Hospital Lien.

On May 31, 2019, Plaintiff filed a putative Class Action Complaint ("Complaint") asserting claims against HLS based on its filing of the Hospital Lien [D.E. 1]. On August 5, 2019, Defendant filed a Motion to Dismiss Plaintiff's Complaint, seeking dismissal of the Complaint in its entirety for failure to state any claim against Defendant, and to dismiss or strike Plaintiff's class allegations [D.E. 9]. On August 19, 2019, Plaintiff filed a First Amended Class Action Complaint in response to Defendant's Motion to Dismiss, asserting substantially identical allegations and claims against Defendant ("Amended Complaint") [D.E. 11]. On September 10, 2019, Defendant filed a Motion to Dismiss the Amended Complaint, similarly seeking dismissal of the Amended Complaint in its entirety for failure to state any claim, and to dismiss or strike Plaintiff's class allegations, which has been fully briefed and remains pending before the Court [D.E. 16, 19, 22].

In January 2020, the parties filed a Joint Agreed Motion to Stay the Litigation, to afford the parties the opportunity to address potential class-wide resolution of this case prior to expending significant time and resources on discovery and other litigation matters. [D.E. 25]. Thereafter, the parties have conducted discovery to determine Settlement Class membership and alleged damages, and have engaged in extensive settlement negotiations over multiple months in a good faith effort to resolve this case.  This included a full-day mediation with mediator Kelly Overstreet Johnson, an experienced independent mediator,

on April 9, 2020, and numerous settlement discussions between the parties and their counsel. On June 30, 2020, the parties agreed to material settlement terms and have since negotiated the terms of the formal Settlement Agreement that is now being presented to the Court for final approval.

## III.    THE PRIMARY TERMS OF THE SETTLEMENT

Subject to Court approval and the individual right to opt out, the proposed Settlement provides the following relief.

### A.    <u>The Proposed Settlement Class</u>

The proposed Settlement Class is defined as:

All persons in the State of Florida who, within four years prior to the filing of the initial Complaint in this Lawsuit: (1) received medical care from a Florida hospital and subsequently had a hospital lien filed by Defendant beyond the applicable time period for perfection of liens in the municipality in which the care was provided; (2) the amount of Defendant's hospital lien was more than the amount of the hospital bill provided to that person (including applicable discounts); and (3) paid Defendant an amount more than the amount of the hospital bill provided to that person (including applicable discounts).

Discovery indicated that there are 43 persons in the Settlement Class.

### B.    <u>Relief Provision/Settlement Consideration</u>

**Settlement Payment:**  During the class period, the 43 putative class members paid a total of $27,740.35 above the amount set forth on their discounted Hospital Bill in order to satisfy a Hospital Lien filed beyond the applicable time period for perfection of liens. The average amount of such payments is approximately $645.00 per class member.  Under this Settlement, each Class Member shall receive a refund equal to 55% of the amount paid over their discounted Hospital Bill amount, which equates to an average Settlement Payment of $355.00.  In total, the combined Settlement Payments for all class members

equates to $15,257.19 (the "Settlement Payment").  The Settlement Payment shall be inclusive of all claims for alleged damages (including any actual, statutory or other damages), interest and other relief with respect to the claims asserted or which could have been asserted against Defendant and arising from or relating to the filing of the Hospital Liens and any alleged efforts to collect a debt via such liens.  Each Settlement Class Member who does not seek to exclude himself or herself from the Settlement will automatically receive their *pro rata* share of the Settlement Payment, based upon the amount each Settlement Class Member paid to Defendant in excess of their discounted Hospital Bill.

**Injunctive Relief:**  In addition to the Settlement Payment, Defendant also agrees that it will not file any future Florida hospital liens in which the hospital lien amount exceeds the amount of the patient's last hospital bill (including any applicable discounts) as of the date of the lien filing.

**C.**    **Opt-Out Provisions**

The Settlement allows for any Settlement Class Member to opt-out of the Settlement.  (Ex. 1, Settlement Agr. at §§ XI-XII).  Any Settlement Class Member who wishes to be excluded from the Settlement Class was advised of his or her right to be excluded, and of the deadline and procedures for exercising that right.  As noted above, the timetable proposed by the Settlement will afford members of the Settlement Class 45 days within which to decide whether to remain in the Settlement Class, or to seek exclusion from it.  Those who wish to pursue individual claims can do so by opting out.

**D.**     <u>**Release**</u>

In exchange for the relief described above, and upon entry by the Court of a Final Order and Judgment approving the Settlement, Plaintiff and the Settlement Class will release Defendant and its affiliated persons/entities (the "Released Parties" as defined in the Settlement) from all claims asserted or which could have been asserted against the Released Parties in this case arising out of or relating to any hospital liens filed by Defendant and any alleged efforts by HLS to collect a debt via such liens (the "Released Claims" as defined in the Settlement Agreement). The Settlement thus contemplates a release tailored to the subject matter addressed in this lawsuit, Defendant's filing of hospital liens.

**E.**     <u>**Class Representative Service Award**</u>

Under the Settlement, Class Counsel have reserved the right to seek a reasonable Service Award to Plaintiff, not to exceed $1,500.00, for her service as the named class representative of the Settlement Class. Any Service Award approved by the Court up to that amount will be paid separately by Defendant from the Settlement Payment being offered to the members of the Settlement Class, and would be in addition to any relief Plaintiff would receive as a member of the Settlement Class.  The Service Award is intended to recognize the time and effort expended by Plaintiff on behalf of the Settlement Class in assisting Class Counsel with the prosecution of this case and negotiating the relief the Settlement proposes to confer to the Settlement Class Members, as well as the exposure and risk Plaintiff incurred by participating in and taking a leadership role in this lawsuit.

The Settlement is not conditioned upon the Court approving any Service Award to the named Plaintiff.

### F. **Attorneys' Fees and Costs**

Under the Settlement, Defendant has agreed to pay reasonable attorneys' fees and litigation costs in an amount not to exceed $35,741.81. The Attorneys' Fees and Costs provision was separately and independently negotiated by the parties during mediation and subsequent settlement discussions, separate and apart from the class settlement provisions. All Attorneys' Fees and Costs will be paid separately from the relief being offered to the Settlement Class Members. The Settlement is not conditioned upon any specific amount of Attorneys' Fees and Costs being approved by the Court.

## IV. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

Rule 23 was recently amended with regard to settlement.

(e**) Settlement, Voluntary Dismissal, or Compromise**. The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

    (1) **Notice to the Class**.

        (A) Information That Parties Must Provide to the Court. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

        (B) Grounds for a Decision to Give Notice. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

            (i) approve the proposal under Rule 23(e)(2); and

(ii) certify the class for purposes of judgment on the proposal.

(2) **Approval of the Proposal**. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The Advisory Committee Notes that accompany the recent modifications explain that the amendments to Rule 23 were intended to focus the Court on the fairness of the settlement and class certification *before* notice is issued to the class. The concern was that notice should not be issued and those resources spent if the Court is not "likely" to find the settlement to be fair and that the case can be certified. The new process is explained by the Advisory Committee as follows:

**Subdivision (e)(1).** The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object. The parties must provide the court with information sufficient to determine whether

9

notice should be sent. At the time they seek notice to the class, the proponents of the settlement should ordinarily provide the court with all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members. The amended rule also specifies the standard the court should use in deciding whether to send notice--that it likely will be able both to approve the settlement proposal under Rule 23(e)(2) and, if it has not previously certified a class, to certify the class for purposes of judgment on the proposal.
The subjects to be addressed depend on the specifics of the particular class action and proposed settlement. But some general observations can be made.

One key element is class certification. If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted. But if a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class. Although the standards for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record. The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement. If the settlement is not approved, the parties' positions regarding certification for settlement should not be considered if certification is later sought for purposes of litigation.

Rule 23. Class Actions, FRCP Rule 23 (Advisory Committee Notes to 2018 Amendments).

Under the revised Rule 23(e), the final approval stage is where the Court must determine whether to actually certify the class and approve the settlement, as opposed to merely finding that it is "likely" to make such findings. That being said, shifting of the certification analysis to the preliminary stage and the "likely to certify" standard should

make the decision whether to grant final approval rather easy.   Absent a change in circumstances, evidence, or objections from class members, a Court's initial determination that it is "likely" to certify the class and approve the settlement should normally be followed by the actual certification of the Class at the final approval stage.   Indeed, this was the goal of the revised rule.

A.      <u>**Class Certification Requirements Have Been Satisfied**</u>

In order to meet her burden at the preliminary approval stage, Plaintiff submitted "all available materials" and arguments for why the proposed Settlement Class meets the certification requirements of Rule 23 and why the Settlement is fair, adequate and reasonable. *See* Rule 23. Class Actions, FRCP Rule 23 (Advisory Committee Notes to 2018 Amendments).  Because all evidence and arguments have previously been submitted to this Court and the issue fully briefed, such arguments need not be repeated again here.  The Court's Preliminary Approval Order finds that the requirements for certification pursuant to Rule 23(a) and (b) appear to be satisfied.  [D.E. 41, Preliminary Approval Order, pp. 1-3].

Suffice it to say, none of the arguments made by Plaintiff or the legal determinations made by this Court have changed since the Preliminary Approval Order was entered. Furthermore, there have been no objections to certification of the Settlement Class.  *See* Exhibit 2, Docket.[3]  Thus, for the same reasons that this Court previously determined that

---

[3] Pursuant to paragraph 4 of the Preliminary Approval Order, objections were to be filed with the Court no later than October 30, 2020.

it was "likely" to certify the class, Plaintiff now asks this Court to fully and finally certify

the following Settlement Class pursuant to Rule 23(a) and (b)(3) for settlement purposes:

> All persons in the State of Florida who, within four years prior to the filing of the initial Complaint in this Lawsuit: (1) received medical care from a Florida hospital and subsequently had a hospital lien filed by Defendant beyond the applicable time period for perfection of liens in the municipality in which the care was provided; (2) the amount of Defendant's hospital lien was more than the amount of the hospital bill provided to that person (including applicable discounts); and (3) paid Defendant an amount more than the amount of the hospital bill provided to that person (including applicable discounts)..

D.E. 41, Preliminary Approval Order, p. 3.

### B. The Proposed Settlement Is Fair, Adequate and Reasonable

As discussed above, the second issue for the Court to determine under amended

Rule 23(e) is whether to finally approve the settlement as fair, adequate and reasonable.

This analysis can be broken down into two parts. First, the Court should consider the

fairness factors listed in Rule 23(e)(3). Second, the Court should consider the reaction of

the Settlement Class Members to the Settlement. Because the Court did not make specific

fairness findings in its Preliminary Approval Order, Plaintiff will address these factors

again here.

### 1. RULE 23(e)(2) FAIRNESS FACTORS

There are four factors listed under Rule 23(e)(2) which are to be considered when

examining the fairness of a proposed settlement: (A) the class representatives and class

counsel have adequately represented the class; (B) the proposal was negotiated at arm's

length; (C) the relief provided for the class is adequate; and (D) the proposal treats class

members equitably relative to each other.   The proposed Settlement satisfies each component easily.

a.   **The Class Representatives and Class Counsel Have Adequately Represented the Class**

Plaintiff has also been actively engaged in this lawsuit to date, assisting counsel by gathering facts and documents necessary to investigate the claims and draft the Complaint, communicating regularly with counsel, participating in the parties' mediation in April 2020 and subsequent settlement efforts.   There is absolutely no evidence that the named Plaintiff has not adequately represented the class in this class action.

Likewise, Class Counsel has litigated this matter vigorously from the outset.   This included responding to Defendant's comprehensive Motions to Dismiss Plaintiff's Complaint and Amended Complaint which raised numerous legal challenges to the viability of Plaintiff's claims and putative class allegation.   In settlement discussions, Class Counsel also fought hard on behalf of the Settlement Class and this was not an easy process. Over the course of many months, the parties engaged in extensive settlement negotiations. Indeed, it was not until after the parties conducted informal discovery, attended a full-day mediation and engaged in substantial, continuing settlement negotiations that a settlement was finally reached.

This certainly was not a class action that was settled prematurely and without discovery of the true facts.   As a result, Plaintiff and Class Counsel have adequately represented the Class in this matter.

### b.     The Proposed Settlement Was Negotiated at Arm's Length

The terms of a class action settlement should reveal that it is "the product of serious, informed, non-collusive negotiations." *In re NASDAQ Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D. NY 1997).   In making this determination, courts begin with a presumption of good faith in the negotiating process.  *See Lee v. Ocwen Loan Serv., LLC*, No. 14-cv-60649, 2015 WL 5449813, at*11 (S.D. Fla. Sept. 14, 2015) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("There is a presumption of good faith in the negotiation process.").[4]

The Parties here were separately represented by able and experienced counsel in complex actions and consumer litigation, and therefore, "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel."  MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42.  The parties' settlement negotiations were extensive and continued for multiple months, requiring numerous informal discussions after the April 2020 formal mediation was unsuccessful.

Thus, the Parties were not "groping in the darkness" during their negotiations, *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977), and the Settlement was certainly

---

[4] *Accord Mees v. Skreened, Ltd.*, No. 14-cv-142, 2016 WL 67521, at *2 (S.D. Ohio Jan. 6, 2016) ("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion."); *Archbold v. Wells Fargo Bank, N.A.*, No. 13-cv-24599, 2015 WL 4276295, at *2 (S.D. W. Va. July 14, 2015) (same); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("[T]he courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement:").

not "the product of uneducated guesswork."  *In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 211 (5th Cir. 1981); *accord Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").  On top of that, the Parties' initial negotiations occurred within the context of formal mediation conducted by an experienced mediator, Kelly Overstreet Johnson. While the case was not settled at this mediation, it did set the groundwork for the Settlement Agreement upon which the Parties ultimately agreed.  The participation of such a respected neutral in the settlement negotiation process should give the Court "confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner."  *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004).[5]

As a result, this second factor also weighs in favor of granting preliminary approval to the proposed settlement.

### c.      The Relief Provided to the Class is Adequate

To grant final approval, this Court should determine whether the proposed Settlement appears to fall within the range of reasonableness given the circumstances. MANUAL FOR COMPLEX LITIGATION (FOURTH) 21.632 at 320-21; *accord Lazy Oil Co. v. Wotoco Corp*., 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*., 166 F.3d 581 (3d Cir. 1999) (in considering a class settlement, the proper inquiry is "whether the recovery falls within th[e] range of reasonableness, not whether it is the most favorable possible result of

---

[5] *See also Faught v. Am. Home Shield Corp.,* No. 07-cv-1928, 2010 WL 10959223, at *21 (N.D. Ala. Apr. 27, 2010) (fact that "negotiations were supervised by a highly experienced mediator" evidenced arms-length nature of class settlement), *aff'd*., 688 F.3d 1233 (11th Cir. 2011).

litigation") (citation omitted).  The range of approval "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Corrugated Container Antitrust Litig*., 659 F.2d 1322, 1325 (5th Cir. 1981) ("[T]he essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness.").

Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable."  *Shy v. Navistar Int'l Corp*., No. 92-cv-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993) (citation omitted).  The Court need simply "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation," because it is "proper to take the bird in hand instead of a prospective flock in the bush."  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Accordingly, the relevant inquiry is "whether the recovery falls within that range of reasonableness, [and] not whether it is the most favorable possible result of litigation."  *Lazy Oil Co*., 95 F. Supp. 2d at 338.

In the present case, this Settlement allows for the Settlement Class to receive essentially a refund equal to 55% of the payment they made over and above the discounted amount set forth on their Hospital Bill in order to satisfy the Hospital Lien filed by HLS. By making the settlement payments commensurate with the amount actually paid, class

members are provided a fair and equitable distribution of their Settlement Payment. Because the Hospital Bills were "discounted," there is an argument that the hospital had the right to collect the higher amount.  The legal significance of the absence of any specific enumerated basis for revoking the discounts in the Hospital Bills and/or the alleged untimely filing of the liens also were factors that were difficult to gauge in terms of increasing the likelihood of one party or the other prevailing at trial.

In addition, the Settlement also provides injunctive relief as Defendant agrees that it will not file any future Florida hospital liens in which the hospital lien amount exceeds the amount of the patient's last hospital bill (including any applicable discounts) as of the date of the lien filing.

Rule 23(e)(2)(c) provides four additional considerations that must be taken into account when determining whether the relief being provided under the Settlement is adequate:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Each factor supports approval.

### i.    The Costs, Risks, and Delay of Trial and Appeal

In the present case, class certification would still have to be decided, which could result in an appeal of the certification decision to the Eleventh Circuit.  Thereafter, trial would ensue and upon final judgment a second appeal could result.  Realistically, no judgment would be final in this case in less than three years and could be as long as five

years considering the likelihood of multiple appeals.  As a result, this settlement is greatly beneficial to the class as it circumvents such long delays.

When it comes to risk, this settlement also provides substantial benefits to Plaintiff and the class.  Of course, as set forth extensively in Defendant's pending Motion to Dismiss the Amended Complaint, there is a sizeable risk as to whether Plaintiff will be able to state viable statutory or common law claims against Defendant with respect to its hospital lien filings. While Plaintiff is confident in this regard, Defendant is equally confident in its legal position and defenses to Plaintiff's claims. Defendant's Motion to Dismiss also raises multiple legal challenges to Plaintiff's putative class allegations, which would be asserted in opposing class certification if this case were to potentially proceed past the pleadings stage. This Settlement eliminates these risks as no Settlement Class Member will have to prove the alleged illegality of Defendant's hospital liens or risk a potential denial of class certification in this case.

When this fact is taken into consideration, the proposed Settlement provides substantial benefits in comparison to any litigation alternative.  This factor therefore weighs heavily in favor of this Court's final approval.

> ii.    **The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims**

As stated above, the process of distributing relief to the Settlement Class is a straightforward and simple process.  First, Settlement Class Members have already received a mail notice advising of the Settlement and providing a thorough explanation of the terms of the parties' Settlement Agreement.  Importantly, no claim forms will need be

filed and each Settlement Class Member's *pro rata* Settlement Payment will be automatically calculated and sent to their last known mailing address. Subject to the Court's approval, given the limited number of Settlement Class Members, Defendant will directly disperse the Settlement Payment to each of these members upon final approval. Class actions do not get any simpler than this.

      **iii.**    **The terms of any proposed award of attorney's fees, including timing of payment**

To encourage private action and enforcement, the FDCPA, FCCPA and FDUTPA all include an award of attorneys' fees to a successful consumer-plaintiff. *See* 15 U.S.C. § 1692k(a); *see also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) ("Given the structure of [the FDCPA], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general."); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) ("The [FDCPA's] statutory language makes an award of fees mandatory."); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) ("The FDCPA's statutory language makes an award of fees mandatory."). By its inclusion of a mandatory fee-shifting provision in the FDCPA, Congress has indicated that society has a significant stake in assisting consumers who may not otherwise have the means to pursue these cases, and in rewarding attorneys who pursue these actions.

"In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Tolentino*, 46 F.3d at 653. That

"commensurate" fee is best measured by "what that attorney could earn from paying clients" at a "standard hourly rate." *Id.* Paying counsel less "is inconsistent with the Congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Id.* As the Northern District of Ohio opined:

> Second, one of the fundamental principles of class action litigation is that it provides an incentive to pursue recovery for tortious conduct that would otherwise go unchecked because the individual harm to a potential plaintiff is too small to justify the cost of litigation. Collective action is the best, and, in many cases, the only feasible, way to redress the harm on an individual basis and discourage similar conduct in the future.

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 791 (N.D. Ohio 2010).

Here, Class Counsel expended considerable time and effort on this matter. Class Counsel negotiated attorney's fees and litigation costs not to exceed a maximum of $35,741.81. As set forth in Plaintiff's Motion for Approval of Attorney Fees, Class Counsel's lodestar is actually higher than the amount of attorney fees and costs negotiated under this settlement. [D.E. 44, pp. 4-5]. As a result, this Court should find that this factor also supports final approval.

### iv.    Any agreement required to be identified under Rule 23(e)(3)

Rule 23(e)(3) reads:

> (3) Identifying Agreements.  The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

It is widely understood that this section of Rule 23 seeks disclosure of any and all side agreements that may not be set forth clearly in the settlement agreement. For example, payments made to objectors is the type of agreements that must be disclosed under this newly-added section of Rule 23. Here, the parties have, through hard-fought negotiations,

included all details within the Settlement Agreement and supporting documents and there are no side agreements to disclose in this case.

## 2. THE PROPOSAL TREATS CLASS MEMBERS EQUITABLY RELATIVE TO ONE ANOTHER

The final fairness factor to be considered under amended Rule 23(e)(2) asks whether the proposed settlement treats class members equitably relative to one another. Here, while the actual amounts received by each class member will differ, each Settlement Class Member will actually receive the same proportionate settlement payment, based on how much each individual paid in excess of their applicable hospital bill.   Moreover, the proposed Settlement does not provide for undue preferential treatment to the named Plaintiff.

After receiving her refund equal to 55% of the amount of her alleged overpayment under this Settlement, Defendant has also agreed to pay Plaintiff Harvey an additional $1,500.   On October 2, 2020, the parties submitted a separate brief addressing the appropriateness of this additional payment to Ms. Harvey. [D.E. 45]. Although the Settlement Agreement references this payment as a "service award," this payment is also justified as statutory damages available to class representatives under the FCCPA and FDCPA could reach $2,000. *See Agan v.Katzman & Korr, P.A*., 222 F.R.D. 692, 701 (S.D. Fla. 2004).   For the reasons stated by Plaintiff in that additional filing and because Defendant does not oppose the payment, the additional payment to Plaintiff Harvey should be approved as not rendering the entire settlement unfair or unreasonable.

And, because there is no distinction between the benefits being provided to the Settlement Class Members, this final factor also weighs in favor of this Court finding the settlement is fair, adequate and reasonable.

### 3.    REACTION OF THE CLASS TO THE SETTLEMENT

The only additional factor for the Court to consider before granting final approval is the reaction of the Settlement Class to the proposed Settlement.  Where "a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014); *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).  "That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003).

The Parties implemented the Notice Program set forth in the Settlement Agreement and Defendant issued timely mail notice to the last known addresses of all 43 Settlement Class Members on September 10, 2020 in accordance with the Court's Preliminary Approval Order. *See* D.E. 41, p. 3.  The opt-out or exclusion deadline was October 30, 2020.  *Id.* at p.4.  As of that date, no class member elected to opt-out of or exclude themselves from the Settlement.

The Court's Preliminary Approval Order also provided that any objections were to be filed with the Court on or before October 30, 2020.  According to this Court's docket,

no objections have been filed.  Additionally, Class Counsel has not received any late opt-outs or other objections to this Settlement from any settlement class members.  *See* Declaration of Brian W. Warwick, attached hereto as <u>Exhibit 1</u>.  Therefore, this factor supports also final approval of the Settlement.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff requests that this Court enter an Order:  (1) finally certifying the Settlement Class pursuant to Rule 23(a) and (b)(3); (2) finally approving the Settlement as fair, adequate, and reasonable; (3) releasing the claims of the Settlement Class pursuant to the release language in the Settlement Agreement; (4) approving the Settlement Payment to Plaintiff Harvey; (5) appointing the undersigned Plaintiff's counsel as Class Counsel; (6) approving the negotiated award of Attorneys' Fees and Litigation Costs of $35,741.81 to Class Counsel; and (7) dismissing this action with prejudice.

Respectfully submitted this 13th day of November, 2020.

**VARNELL & WARWICK, P.A.**

By:    <u>/s/ Brian W. Warwick</u>
        Brian W. Warwick
        Florida Bar No.:  0605573
        Janet R. Varnell
        Florida Bar No.:  0071072
        1101 E. Cumberland Avenue
        Suite 201H, #105
        Tampa, FL 33602
        Telephone: (325) 753-8600
        Facsimile: (352) 504-3301
        bwarwick@varnellandwarwick.com
        jvarnell@varnellandwarwick.com
        awallace@varnellandwarwick.com

        Kristopher M. Nowicki, Esq.
        knowicki@nooneyandroberts.com
        **THE LAW OFFICE OF NOONEY & ROBERTS**
        1680 Emerson Street
        Jacksonville, Florida 32207
        Telephone: (904) 309-8613

        *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of November, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

Alan D. Lash
Florida Bar No. 510904
alash@lashgoldberg.com
Michael L. Ehren
Florida Bar No.: 0043768
mehren@lashgoldberg.com
Lash & Goldberg LLP
Suite 1200, Miami Tower
100 Southeast Second Street
Miami, Florida 33131-2100
Tel: (305) 347-4040
Fax: (305) 347-4050
*Attorneys for Defendant*

/s/ Brian W. Warwick
Brian W. Warwick